No. 61,695

STATE OF KANSAS, *Appellee*, v. MICHAEL LADD, *Appellant*.

(769 P.2d 631)

Opinion filed March 3, 1989.

*Donald C. Long*, of Kansas City, argued the cause and was on the brief for the appellant.

*Robert T. Stephan*, attorney general, *Dennis W. Moore*, district attorney, and *Stephen R. Tatum*, assistant district attorney, were on the brief for the appellee.

The opinion of the court was delivered by

MILLER, C.J.: This is an appeal by the defendant, Michael Ladd, from convictions of one count of aggravated robbery, K.S.A. 21-3427, and two counts of kidnapping, K.S.A. 21-3420, in the district court of Johnson County. The sole issue raised on appeal is whether the trial court erred when it permitted the prosecutor to cross-examine the defendant as to his prior invocation of the Fifth Amendment privilege when he was called as a witness in the earlier trial of his brother and codefendant, Raymond Ladd. Our opinion in *State v. Ladd* (No. 61,499, unpublished opinion filed December 9, 1988) affirmed Raymond's convictions of aggravated robbery and kidnapping.

The background facts of the offenses are set forth in the Raymond Ladd opinion, where we said:

"In February 1987, Raymond Ladd entered a motel in Lenexa and pulled a gun on Steven Snyder, who was working the motel's front desk. Raymond led Snyder to the back office where they encountered another employee, Russell Koca. Raymond asked where the money was kept. He then made Koca go to the front desk and remove the drawer from the cash register.

"While removing the drawer from the register, Koca saw another person,

Raymond's brother Michael, crouched behind the front desk. Koca then returned to the back office. Raymond tied Snyder and Koca at the wrists and told them to lay face down on the floor. He also frisked the two men. Both Snyder and Koca testified that they could hear someone else removing the money from the cash drawer as Raymond was tying them up.

"After Raymond and his brother left, Koca was able to untie the cord around his wrists and to call the police. A Lenexa police officer testified that he received a message about the robbery over his police radio. As the officer was driving toward the motel, he saw a car moving in the opposite direction occupied by two men matching the description of the robbers. The officer followed the car as it unsuccessfully attempted to elude him. After the car ran into a fence, the two men fled on foot. Raymond was apprehended nearby. A gun was found near his hiding place. Michael Ladd was later apprehended in Jackson County, Missouri."

After Michael was arrested in Missouri, he was extradited. On the day he arrived in Kansas, he was subpoenaed to testify as a witness for the defense at his brother's trial.

Michael had not been before a judge and had not been given an initial hearing on the charges pending against him at the time he appeared at Raymond's trial. The trial judge determined that Michael should have the benefit of counsel before he was called to the witness stand. As none had yet been appointed for Michael or retained by him in his own case, the judge asked Mr. Blume, an attorney who was in the courthouse on other business, to advise him. Mr. Blume no longer practices criminal law. He had a very short time, perhaps a few minutes, to gather the facts and advise Michael. He advised Michael to assert his Fifth Amendment right against self-incrimination. At a hearing in chambers, the trial judge inquired whether Michael wished to invoke his Fifth Amendment right not to testify, and Michael responded that on advice of counsel he was refusing to testify in his brother's case. Michael did not appear further during Raymond's trial.

Subsequently, trial of the case against Michael proceeded. The defense was alibi. The first two trials resulted in a hung jury, the jury being unable to agree on a verdict. At the second trial, the judge distinguished this case from *State v. Nott*, 234 Kan. 34, 669 P.2d 660 (1983), and refused to permit the State to introduce evidence that Michael had asserted his Fifth Amendment privilege at Raymond's trial. At the third trial, for the first time, Michael's alibi testimony was impeached by the State by showing, on cross-examination, the fact that he had invoked the Fifth

Amendment privilege when called to testify at Raymond's trial. During closing argument, over objection by defense counsel, the State commented extensively on Michael's failure to testify at his brother's trial. Michael was found guilty on all counts.

The trial judge who presided at the third trial relied upon our opinion in *State v. Nott*, 234 Kan. 34, in ruling that defendant's Fifth Amendment refusal to testify at the severed trial of his brother was admissible. In *Nott*, the question before us was:

"Where a defendant is called as a witness by codefendants in their separate trial and declines to answer questions relative to his participation in the charged crimes on the basis of the Fifth Amendment privilege against self-incrimination, but testifies to an alibi defense in his own subsequent trial, may the State attack defendant's credibility by inquiring on cross-examination as to defendant's assertion of the Fifth Amendment in the codefendants' trial on the basis the prior testimony is an inconsistent statement?" 234 Kan. at 36.

We answered the question in the affirmative, and held that under the circumstances of that case, the defendant's refusal on Fifth Amendment grounds to answer questions directly relating to the commission of the charged crimes was truly inconsistent with the alibi testimony which he later gave at his own trial. Since the opinion of the court was specifically limited to the facts and circumstances of that case, we should examine them.

A high school in Nemaha County was burglarized and valuable property was stolen in December 1981. Nott and four other individuals were arrested and charged with the burglary and theft. A joint preliminary examination was held on May 13, 1982. Nott and the other defendants were bound over for trial. The trial of two defendants, Whitaker and Kirk, commenced on October 25, 1982. The following day, Nott was called as a witness for the defense. 234 Kan. at 35. He answered questions concerning his name and address and then, with his counsel present, declined to answer the following questions:

"Mr. Nott, is it not a fact that Mr. Kirk and Mr. Whitaker were not present when you and Jerry and Allen Cavin broke in the Wetmore school?

. . . .

"Mr. Nott, are you the one that placed Mr. Whitaker's drivers license in the school?

. . . .

"What did you and the Cavin boys do with the stuff that you stole from the Wetmore school?" 234 Kan. at 53.

Nott, charged separately with the same offenses as Whitaker and Kirk, had already been before the court in his own case, had

had a preliminary examination, had been bound over for trial, and had had an attorney representing him in the matter for over five months. His attorney was present in court when Nott refused to answer the three questions on the grounds that his answers might incriminate him. We noted that Nott's invocation of the Fifth Amendment privilege was not the result of court admonition; his silence was not government-induced. 234 Kan. at 53-54.

Defendant asks that we overrule *Nott*. We do not reach that question, however, as the facts in this case distinguish it from *Nott*. At the time of his appearance in the Raymond Ladd case, Michael Ladd was charged with crimes arising at the same time as the crimes with which Raymond was charged. There, the similarity with the Nott case ends.

Michael Ladd had not been before a court on the charges pending against him. He had neither retained an attorney nor had one been appointed for him in his own case. The State brought Michael back from Missouri and, in response to the subpoena, took him directly to Raymond's trial. Attorney Blume had but a few moments in which to confer with the defendant and advise him, far less time than the five months Nott's counsel had. Obviously, Mr. Blume had no time to delve into the facts of the case or conduct any legal research.

In *Nott*, we said:

"[B]efore permitting a defendant at his own trial to be asked about his prior invocation of the Fifth Amendment to remain silent, *the trial judge should determine whether there is true inconsistency between the prior silence and subsequent testimony.* . . . If the judge determines there is true inconsistency then he may permit questions on defendant's prior silence as it affects the credibility of his subsequent testimony.

. . . .

[The three questions which Nott refused to answer on Fifth Amendment grounds] were not general questions relating to whether he knew the other defendants . . . . Instead these were questions going to the heart of the actual commission of the crimes . . . .

. . . .

"We conclude defendant Nott's assertion of a Fifth Amendment privilege against self-incrimination in the Whitaker-Kirk trial to the specific questions asked herein was truly inconsistent with his trial testimony." (Emphasis supplied.) 234 Kan. at 52-54.

So far as the record before us discloses, Michael Ladd was not asked any specific questions in the Raymond Ladd trial. Instead, after brief consultation with counsel, Michael asserted his Fifth

Amendment privilege in chambers and refused to testify on the grounds that it might incriminate him. Michael's car was used as the getaway vehicle. What knowledge he had of the offense, and what questions might have been asked of him, answers to which might have incriminated him, we need not speculate. The trial judge in this case, on motion of the State and upon a showing that the defendant had taken the Fifth Amendment in order to avoid testifying in the Raymond Ladd case and that the defendant had an extensive prior record, granted the motion and permitted the cross-examination. The trial court conducted no evidentiary hearing and had no evidentiary record upon which to determine inconsistency. The trial court made no finding that the prior silence was truly inconsistent with the subsequent testimony.

We conclude that, under the facts and circumstances of this case, there was no showing on the record that the prior assertion of the Fifth Amendment privilege and the defendant's trial testimony were truly inconsistent. We hold further that it was unfair under the peculiar facts of this case to permit the State to cross-examine the defendant about his prior invocation of the Fifth Amendment privilege and to permit comment upon defendant's prior silence during closing argument.

For the reasons stated, the judgment is reversed and the case is remanded for a new trial.