(38 P.3d 746)
No. 86,055

RICKEY L. HOGAN, *Appellant*, v. STATE OF KANSAS, *Appellee*.

Opinion filed January 25, 2002.

*Patrick H. Dunn*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for the appellant.

*Ian H. Taylor*, assistant district attorney, *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, for the appellee.

Before KNUDSON, P.J., PIERRON and GREEN, JJ.

PIERRON, J.: Rickey L. Hogan was convicted of aggravated burglary and robbery. He filed a motion pursuant to K.S.A. 60-1507, which the district court denied. The court also denied Hogan's motions to reconsider and to amend his petition. Hogan appeals.

Hogan was charged with aggravated burglary, robbery, and aggravated arson, all occurring on December 6, 1997. Pursuant to a plea agreement, Hogan entered a no contest plea to aggravated burglary and robbery. In exchange, the State dismissed the aggravated arson charge, did not object to Hogan's motion for a dispositional departure sentence, and recommended concurrent sentences in the mid-range of the sentencing guidelines grid for a prison term. Hogan told the district court he had no complaints about his counsel's representation and he understood his right to compel witnesses to testify on his behalf.

The district court, after hearing the factual basis, accepted the plea and found Hogan guilty of both charges. It granted Hogan probation for 36 months, with an underlying prison term of 114 months. Hogan's probation was revoked on February 11, 1999.

Hogan filed a motion pursuant to 60-1507 and alleged his plea was illegal because it violated § 10 of the Kansas Constitution Bill

of Rights, banning a person from being a witness against himself or herself. Hogan contended § 10 prohibits guilty pleas and plea agreements and does not allow a person to waive his or her rights. Hogan requested his plea be set aside.

On June 29, 2000, the district court held, without making findings of fact, that the files and records of the case conclusively showed Hogan was not entitled to relief and that neither an attorney nor a hearing was necessary. It dismissed Hogan's 60-1507 motion.

On July 18, 2000, Hogan filed a "Motion for Rehearing or Reconsideration and/or to Vacate and Set Aside, or for Relief from Judgment and Motion to Amend the Original Petition." He claimed the amended motion raised "new evidence and issues" not raised in the original motion and that it was not a successive motion. Hogan requested that the court reconsider its decision, vacate and set aside the order of dismissal, reinstate the original motion, and grant him leave to amend that motion so the claims made in the amended motion were included. The amended motion that was attached claimed Hogan's attorney had failed to contact witnesses who could provide exculpatory evidence before advising him to plea. The amended motion also stated this new claim was not included in his original motion due to "over-sight, inadvertence, or excusable neglect."

On August 28, 2000, the district court denied Hogan's motion for reconsideration. It found the same reasons as set forth in its previous order showed that Hogan was still not entitled to relief on his 60-1507 motion. Hogan filed his notice of appeal on September 6, 2000.

While there are some serious questions as to whether Hogan's appeal is properly before this court, we will deal with his substantive complaints.

Hogan claims the district court erred by denying his motion to withdraw his plea based upon § 10 of the Kansas Constitution Bill of Rights. He fails to provide a standard of appellate review as mandated by Supreme Court Rule 6.02(e) (2000 Kan. Ct. R. Annot. 35).

Although Hogan captioned his motion as one pursuant to 60-1507, in reality, it was a motion to set aside a plea pursuant to K.S.A. 2000 Supp. 22-3210(d).

The standard of appellate review of a district court's decision on a motion to withdraw a plea is whether the district court abused its discretion. *Wadsworth v. State*, 25 Kan. App. 2d 484, 967 P.2d 337, *rev. denied* 266 Kan. 1116 (1998).

A district court may set aside a judgment of conviction after sentencing and permit a defendant to withdraw a guilty plea in order to correct manifest injustice. K.S.A. 2000 Supp. 22-3210(d). It should be noted that Hogan does not claim innocence as a basis for withdrawing the plea. It should also be noted that Hogan does not claim the court failed to address him personally, determine if his plea was voluntary, or inquire whether he understood the nature of the charges and the consequences of his plea. See K.S.A. 2000 Supp. 22-3210(a)(3). Hogan's argument is that even if the court complied with K.S.A. 2000 Supp. 22-3210(a)(3), § 10 bans his plea.

Section 10 of the Kansas Constitution Bill of Rights states, in pertinent part: "No person shall be a witness against himself."

Hogan argues no contest pleas have the same effect as guilty pleas that require an admission of guilt to the charges because the State must provide a factual basis for the charges and the defendant's no contest plea does not contest that evidence. Thus, Hogan states, he has admitted the State could present evidence to prove the charges as pled. He believes § 10 of the Kansas Constitution Bill of Rights provides a stricter prohibition against self-incrimination than the Fifth Amendment to the United States Constitution.

The State argues this issue was decided in *State v. Morris*, 255 Kan. 964, 981, 880 P.2d 1244 (1994). Morris made an ambiguous request for counsel when questioned by Arizona officers on Arizona charges. The Arizona officers ceased questioning him. Morris received court-appointed counsel on the Arizona charges. Officers from Kansas arrived later and gave a *Miranda* warning to Morris. After waiving his rights, Morris confessed to crimes in Kansas.

Morris argued he had invoked both his Fifth and Sixth Amendment rights to counsel when questioned by the Arizona officers.

The *Morris* court rejected this argument because (1) Morris' ambiguous response to the Arizona officials was not an invocation of any right to counsel and (2) the Sixth Amendment right to counsel during judicial proceedings is offense-specific and does not prevent interrogation without counsel for unrelated crimes for which counsel had been appointed. Further, the United States Supreme Court, in *McNeil v. Wisconsin*, 501 U.S. 171, 177-78, 115 L. Ed. 2d 158, 111 S. Ct. 2204 (1991), rejected combining the right to counsel in custodial interrogations under the Fifth Amendment with the right to counsel during formal judicial proceedings under the Sixth Amendment. 255 Kan. at 978-79.

Morris then argued *McNeil* did not apply because § 10 of the Kansas Constitution Bill of Rights combined several protections found in the Fifth and Sixth amendments into one provision. The court agreed § 10 contained both Fifth and Sixth Amendment rights. 255 Kan. at 979. Nevertheless, it refused to impose greater restrictions on police activity under the Kansas Constitution than those the United States Supreme Court holds to be necessary under the federal Constitution. 255 Kan. at 981.

"The provisions of § 10 of the Kansas Constitution Bill of Rights grant no greater protection against self-incrimination than is afforded by the Fifth Amendment to the United States Constitution. The manifest purpose of the constitutional provisions, both state and federal, is to prohibit the compelling of self-incriminating testimonial or communicative acts from a party or a witness. The liberal construction which must be placed upon constitutional provisions for the protection of personal rights requires that the constitutional guaranties, however differently worded, should have as far as possible the same interpretation. [Citation omitted.]" 255 Kan. at 981.

Hogan contends *Morris* is not controlling because it was not directly addressing the issue herein. He states *Morris* involved only a comparison of the right to silence under the Fifth Amendment and the right of assistance of counsel under the Sixth Amendment to those rights provided by § 10 of the Kansas Constitution Bill of Rights.

Although the issue in *Morris* was different from the one here, the result should be the same—the Kansas Constitution is not interpreted differently because its language differs somewhat from the United States Constitution.

Hogan contends that by entering a plea of guilty or no contest, a defendant is, in essence, testifying against himself or herself. He contends § 10 bans a defendant from testifying against himself or herself. The Kansas Supreme Court has stated the following regarding a defendant's testimony:

"In a criminal trial, a defendant has the absolute right not to be *called* as a witness. Fifth Amendment to the United States Constitution; Kan. Const. Bill of Rights, § 10. In Kansas this right had been made statutory law as well as by the enactment of K.S.A. 60-423(a) which provides:

'Every *person* has *in any criminal action in which he or she is an accused* a *privilege not to be called as a witness and not to testify.*' (Emphasis supplied.)

"If a defendant desires to testify in his or her own trial, he or she may do so. In so doing defendant waives the right not to be called as a witness in his or her trial." *State v. Nott*, 234 Kan. 34, 36, 669 P.2d 660 (1983).

Hogan cites no authority that the Kansas Supreme Court would depart from *Morris* and *Nott* and interpret § 10 of the Kansas Constitution Bill of Rights differently than the United States Supreme Court has interpreted the Fifth Amendment to the United States Constitution. Under *Nott*, Hogan waived his right not to testify against himself under § 10 of the Kansas Constitution Bill of Rights when he elected to enter a plea of no contest.

Section 10 of the Kansas Constitution Bill of Rights does not prohibit an accused from admitting guilt to criminal charges.

The district court did not err by denying Hogan's motion to withdraw his plea.

Hogan further argues the district court should have granted a hearing and appointed counsel on his amended 60-1507 motion because he alleged substantial issues of fact that were not contained within the record.

As the State notes, Hogan ignores the district court's denial of his motion to vacate the judgment and instead addresses only the merits of his amended motion. The State correctly argues Hogan has abandoned the court's denial of his motion to vacate the judg-

ment. " 'Where the appellant fails to brief an issue, that issue is waived or abandoned.' [Citation omitted.]" *Bergstrom v. Noah*, 266 Kan. 847, 873, 974 P.2d 531 (1999). Although not discussed by the State, this failure is fatal to the issue he now argues.

Hogan fails to realize that his amended motion was never considered or filed. The district court denied his motion to vacate the judgment and, thus, it never granted his motion to amend the original motion. The denial of a motion filed under 60-1507 is a distinctly separate concept from the denial of a motion to vacate the judgment filed under K.S.A. 60-260(b) and the denial of a motion to amend a petition or motion filed under K.S.A. 2000 Supp. 60-215(a). Because he failed to properly appeal the court's denial of his motion to vacate the judgment, that decision is final, and there is no procedural basis for reaching the merits of the amended motion.

Additionally, although the district court did not address the amended motion, the case need not be remanded to the district court for a determination on Hogan's claim of ineffective assistance of counsel. This court can review the records and the file of Hogan's criminal case to decide if his motion presents triable issues of fact and substantial questions of law. See *Giblin v. Giblin*, 253 Kan. 240, 253, 854 P.2d 816 (1993) (if the controlling facts are based upon written evidence such as pleadings and depositions, and not the evaluation of the witnesses' credibility, this court can upon appellate review examine and consider the evidence to determine de novo what the facts establish).

When reviewing a motion filed pursuant to 60-1507, the district court applies the following standards: A judgment of criminal conviction carries a presumption of regularity. *Wright v. State*, 5 Kan. App. 2d 494, 495, 619 P.2d 155 (1980). The movant has the burden of proof of establishing irregularity of the conviction, or the grounds for relief. Supreme Court Rule 183(g) (2000 Kan. Ct. R. Annot. 211). If the motion, files, and records conclusively show that the movant is not entitled to relief, an evidentiary hearing is not required. K.S.A. 60-1507(b). An evidentiary hearing and appointment of counsel are required if the movant is indigent and

the motion presents triable issues of fact and substantial questions of law. Supreme Court Rule 183(f) and (i); 5 Kan. App. 2d at 495.

A plea of guilty may be challenged by filing a motion pursuant to 60-1507 where the movant claims the plea was not knowingly or voluntarily made due to ineffective assistance of counsel. *Garrett v. State*, 20 Kan. App. 2d 513, 889 P.2d 795, *rev. denied* 257 Kan. 1091 (1995). The movant must show "counsel's performance fell below the standard of reasonableness and there is a reasonable probability that, but for counsel's ineffectiveness, the results would have been different." 20 Kan. App. 2d at 514. This court's review of counsel's performance must be highly deferential, eliminate the distorting effects of hindsight, reconstruct the circumstances of the challenged conduct by counsel, and evaluate that conduct from counsel's perspective at the time of trial. There is a strong presumption that counsel's performance was effective. 20 Kan. App. 2d at 514-15.

The State subpoenaed Shirley Jones, Ervin Phillips, Sharon Carney, and Arwena Jones for trial on June 22, 1998. This was the same day Hogan entered his plea. At the plea hearing, the State proffered its witnesses' testimony would be as follows: Ervin Phillips was at home watching television when he heard a loud banging on his front door at about midnight. He heard a familiar voice shout for him to open the door. Phillips told the person he did not want any company. Phillips next heard someone "forcefully" kicking in his door. As Phillips began to get up, two males, Hogan and Devon Biser, entered the house and forced him to sit back down on the couch. They then pulled out the telephone cord in the living room.

Phillips recognized Hogan. For the next 5 to 10 minutes, Hogan stood over Phillips as Biser ransacked Phillips' kitchen. Biser came back into the living room carrying several packages of meat and beer. Biser and Hogan then left. When Phillips went to the kitchen to use the other phone, he found the kitchen phone had been pulled from the wall and three fires were burning in his kitchen. Phillips claimed he did not give Biser or Hogan permission to enter his residence or take his property. Phillips was in fear of being injured when Biser and Hogan entered his residence and forced him to remain on his sofa.

The State also told the district court that Hogan had told the officers when he was arrested that he was involved in the aggravated burglary and robbery at Phillips' residence. Hogan claimed Biser had kicked in the front door and had stolen groceries from Phillips' kitchen.

The State also said Carney and Jones were interviewed by the police. Carney said she knew Hogan and Biser, and they had admitted to her that they had forced their way into Phillips' residence and Biser had stolen meat and beer. Biser told Carney he took the meat to a dope house to exchange for drugs. Jones told the police she went to Phillips' house looking for Carney, who had been there earlier. Jones stayed in the car while Biser and Hogan went to Phillips' house. After 5 to 10 minutes, Biser and Hogan returned to the car with beer.

After the recitation of these facts, the district court asked Hogan's attorney if the proffered testimony was substantially what he anticipated the witnesses' testimony to be. He responded, "Based on my recollection of the police reports, yes, your Honor."

In support of his motion for a dispositional departure, Hogan's attorney argued at the sentencing hearing that Hogan had a minor or passive role in the crimes. He claimed Biser went to Phillips' residence looking for his (Biser's) girlfriend. Biser decided to "act out" when he did not find her there. Biser went into the areas of residence where he did not have permission to go, lit several fires in the kitchen, and took property from Phillips' kitchen while Hogan stayed in the living room trying to calm Phillips by talking to him. Hogan's attorney acknowledged Hogan "look[ed] bad" because he was with another who committed an act of violence. Hogan's attorney also stated he thought Hogan's defense would make the case a good one to take to trial, but he and Hogan decided not to take that risk after the State offered the plea agreement.

Hogan's amended 60-1507 motion alleged he told his attorney that Jones, Phillips, and Sharon Hogan would give exculpatory evidence, specifically, that he had not participated in the burglary or robbery. He also alleged Sharon Hogan would testify that the police had coached her and Phillips into falsely implicating him in the crimes. Hogan claimed his attorney did not investigate his de-

fense. Hogan stated Douglas L. Adams, Jr., would be requested to bring his file and records for Hogan's criminal case. Adams was the attorney who represented Hogan in the criminal proceedings. Hogan did not explain who Sharon Hogan was; it is assumed Sharon Carney and Sharon Hogan are the same person.

Hogan's motion to vacate the judgment in his original 60-1507 motion was based upon "new[ly discovered] evidence and issues." However, Hogan alleged in the amended 60-1507 motion that he had advised his attorney of the witnesses' exculpatory testimony prior to his plea. Thus, the evidence and issues were not new. It is clear any exculpatory testimony from these three witnesses regarding Hogan's participation in the crime would be inconsistent with their prior statements to the police. Also, any exculpatory testimony by Phillips would contradict his sworn testimony at the preliminary hearing. His preliminary hearing testimony was consistent with the State's proffered testimony at the plea hearing.

If Jones, Carney, Hogan, and Phillips had given exculpatory testimony at a trial, the State could have used their statements to the police and Phillips' sworn testimony at the preliminary hearing for impeachment. The State could also have gotten Hogan's confession to the police admitted into evidence. Hogan implicated himself in the crimes with his confession. He did not claim his confession was made unknowingly or involuntarily. Further, if Hogan denied his knowledge of or participation in the crimes with Biser at a trial, the State would most likely file a motion to have part of Hogan's criminal history admitted into evidence to prove his intent. Hogan has convictions for residential burglary, two counts of felony theft, attempted arson, and criminal damage to property. If any of the convictions were factually similar and admitted into evidence, Hogan's defense could have suffered immensely.

There is no evidence the three witnesses would have testified differently than before.

If the witnesses would have testified as Hogan alleged in the amended 60-1507 motion, the State could have easily shaken their credibility and used other evidence to show Hogan's participation. As Hogan's attorney advised at sentencing, the decision to accept the State's plea offer was a tactical decision because it appeared to

be a lesser risk. That decision was not a deficient one. A tactical decision is not itself ineffective assistance of counsel. See *Sanders v. State*, 26 Kan. App. 2d 826, 829, 995 P.2d 397 (1999), *rev. denied* 269 Kan. 934 (2000). Hogan has also failed to show he was prejudiced by his attorney's conduct because a jury trial would have resulted in a different outcome. Rather, it is likely a jury would have convicted Hogan on all charges, including the aggravated arson that the State dismissed.

Affirmed.