NOT DESIGNATED FOR PUBLICATION

No. 123,878

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

KYLE A. CARTER,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; SEAN M.A. HATFIELD, judge. Opinion filed July 15, 2022. Affirmed.

*Gerald E. Wells*, of Jerry Wells Attorney-at-Law, of Lawrence, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HURST, P.J., GARDNER, J., and PATRICK D. MCANANY, S.J.

PER CURIAM: Kyle A. Carter appeals the district court's denial of his K.S.A. 60-1507 motion seeking relief from his prison sentence. Carter argues the court erred by denying several of his claims under the doctrine of res judicata and violated Supreme Court Rule 183(j) (2022 Kan. S. Ct. R. at 242) by failing to make sufficient findings of fact and conclusions of law. Although this court agrees with Carter that his claims were not barred by res judicata, that concurrence is of little consequence because the record

1

conclusively shows that he was not entitled to relief and the district court's decision is affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

On April 24, 2014, a jury found Carter guilty of premeditated first-degree murder, and the district court sentenced him to life in prison without the possibility for parole for 25 years. The facts underlying the case were fully discussed in *State v. Carter*, 305 Kan. 139, 380 P.3d 189 (2016), and are largely irrelevant to his current appeal.

In his 2016 direct appeal, Carter sought reversal of his conviction and claimed:

- The State committed seven instances of prosecutorial misconduct;
- the trial judge improperly commented on the reasonable doubt standard prior to voir dire;
- the jury should have been provided an instruction on the lesser included offenses of reckless second-degree murder and voluntary manslaughter;
- the aiding and abetting instruction insufficiently stated the applicable law; and
- cumulative error deprived him of a fair trial.

The Kansas Supreme Court found no reversible error, affirmed his conviction and sentence, and the mandate issued on November 30, 2016. *Carter*, 305 Kan. 139.

The next year, on March 6, 2017, Carter filed a pro se K.S.A. 60-1507 motion, alleging ineffective assistance of counsel based on (1) his attorney's failure to object to the prejudicial conduct of the State during closing argument; (2) his attorney's failure to object to the comment the trial judge made about the reasonable doubt standard; and (3) his attorney's failure to call his codefendant to testify at trial. Carter's motion further asserted that he had obtained "exculpatory scientific evidence of his actual innocence,

2

evidence that was not technologically available at the time of his trial." Carter filed a memorandum in support of his motion. Over a year and a half later, on December 14, 2018, Carter filed a motion titled "MOTION FOR NEWLY DISCOVERED EVIDENCE AND ACTUAL INNOCENCE PERSUANT [*sic*] TO K.S.A. 60-1507(f)(2)(A) 2017 SUPP." In this second motion, Carter requested that two correspondences he had received from his codefendant's wife—containing information that "was not known or available at the time of trial or appeal"—be included in his previously filed K.S.A. 60-1507 motion as evidence of his actual innocence.

Almost two years later, on October 26, 2020, the State responded to Carter's two motions and argued that several of Carter's claims had already been addressed by the Kansas Supreme Court in his direct appeal and he was therefore barred from relitigating those issues. The State further argued he had already filed a motion for postconviction DNA testing under K.S.A. 21-2512 and that his claim of actual innocence should be dealt with in that proceeding, which was still pending. Finally, the State noted that Carter's additional motion, filed in December 2018, was untimely filed and did not relate back to any of the claims he raised in his initial, timely K.S.A. 60-1507 motion.

That same day the district court conducted a preliminary hearing on Carter's motions. After listening to the arguments of the parties, the court denied Carter's K.S.A. 60-1507 motion and announced its ruling:

> "I am adopting the findings and conclusions of the State in—as laid out in its response in this matter as the findings and orders of the Court. I believe that the petitioner, particularly with regards to the ineffective assistance of counsel claims, he is barred from relitigating those same issues again, as the State has pointed out. They have been argued and decided by the Kansas Supreme Court."

The court further explained that Carter's claim that his counsel was ineffective for failing to call his codefendant to testify was meritless and that his DNA-based claim was more

3

properly considered in the separate proceedings initiated under K.S.A. 21-2512. Finally, the court found that Carter's second motion filed in 2018, which asserted that he had newly discovered evidence from his codefendant's wife, was untimely filed and did not relate back to his initial K.S.A. 60-1507 motion. Accordingly, the court denied Carter's motion in its entirety without holding an evidentiary hearing.

Carter appeals.

DISCUSSION

On appeal, Carter argues the district court erred in denying his K.S.A. 60-1507 motion on two grounds:  (1) when it found that he had previously raised ineffective assistance of counsel claims in his direct appeal; and (2) that the court violated Supreme Court Rule 183(j) by adopting the State's findings of fact and conclusions of law rather than creating its own. Carter does not challenge, and has thus abandoned, any claims that the district court erred when it found that his claim of newly discovered evidence would be more properly handled through his previous K.S.A. 21-2512 motion and that his second K.S.A. 60-1507 motion was untimely. See *State v. Salary*, 309 Kan. 479, 481, 437 P.3d 953 (2019) ("Issues not adequately briefed are deemed waived or abandoned.").

Through a K.S.A. 60-1507 motion, defendants can collaterally challenge their convictions or sentences. A district court has three options when reviewing 60-1507 motions. First, it may summarily deny the motion if the court determines the motion, files, and case records conclusively show the defendant is not entitled to relief. Second, the court may deny the motion after holding a preliminary hearing and determining that no substantial issues exist. Third, if the court determines that a substantial issue exists it may conduct a full evidentiary hearing on the motion. This court's standard of review depends on which procedural path the district court took. *White v. State*, 308 Kan. 491, 504, 421 P.3d 718 (2018).

4

Carter incorrectly alleges the district court denied his motion after holding a full evidentiary hearing. But the district court merely conducted a preliminary hearing—no witnesses or evidence beyond the record were presented—before denying his motion. When a district court denies a 60-1507 motion after a preliminary hearing, this court reviews the district court's factual findings to ensure they are supported by substantial competent evidence and conducts a de novo review of the court's conclusions of law and ultimate decision. This standard requires this court to independently review the motion and record to determine whether they conclusively show that Carter is not entitled to relief. See *White*, 308 Kan. at 504.

1. *The district court erred in concluding that several of Carter's claims were barred under the doctrine of res judicata.*

Before reviewing the merits of Carter's motion, this court must determine whether the district court erred in finding that some of his claims were barred because he had already raised them in his direct appeal. Easing this analysis, the State concedes that Carter "is correct that our Supreme Court did not address ineffective assistance of trial counsel on direct appeal." Although two of Carter's ineffective assistance of counsel claims in his current 60-1507 motion are *based* on issues he previously raised on direct appeal, Carter did not actually bring any ineffective assistance of counsel claims in his direct appeal. While the district court did not use the phrase res judicata in dismissing Carter's current claims, the court noted that Carter "is barred from relitigating those same issues again . . . . [t]hey have been argued and decided by the Kansas Supreme Court," which makes it clear that the district court relied on res judicata to bar those claims.

While the arguments raised in Carter's direct appeal provide the factual foundation for his present ineffective assistance of counsel claims, Carter has not previously argued ineffective assistance of counsel. Rather, he argued the substance and merit of those alleged errors. Although his current arguments stem from the same alleged errors, the

claims are based on different legal theories. The commonality of the factual underpinnings of Carter's present arguments does not transform his K.S.A. 60-1507 motion for ineffective assistance of counsel into the same legal claims that he raised on direct appeal under the doctrine of res judicata. See *Bogguess v. State*, 306 Kan. 574, 579-80, 395 P.3d 447 (2017); *Grossman v. State*, 300 Kan. 1058, 1063, 337 P.3d 687 (2014); see also *State v. Dull*, 298 Kan. 832, 839, 317 P.3d 104 (2014) ("The merits of a claim of ineffective assistance of counsel ordinarily are not addressed for the first time on direct appeal.").

The doctrine of res judicata prohibits litigants from seeking appeal of issues that were previously decided on appeal when its four elements are met: "(1) same claim; (2) same parties; (3) claims were or could have been raised; and (4) a final judgment on the merits." *State v. Martin*, 294 Kan. 638, 640-41, 279 P.3d 704 (2012). Not all four elements of res judicata are met here because Carter never actually raised, and the Supreme Court never ruled on, his present claims of ineffective assistance of counsel. Thus, the district court erred by holding Carter's current claims were barred because they were previously raised and decided.

2. *Carter is not entitled to relief on his ineffective assistance of counsel claims.*

While the State concedes this error, it argues the district court was still correct in dismissing Carter's motion and achieved the correct result but for the wrong reason. This court agrees that the dismissal of Carter's 60-1507 motion is appropriate because the motion, files, and records conclusively show that he is not entitled to relief. To establish a claim of ineffective assistance of counsel, Carter was required to establish:

> "(1) the performance of defense counsel was deficient under the totality of the circumstances, and (2) prejudice, i.e., that there is a reasonable probability the jury would have reached a different result absent the deficient performance. [Citation omitted.]" *Sola-Morales v. State*,

6

300 Kan. 875, 882, 335 P.3d 1162 (2014) (relying on *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 [1984]).

A reasonable probability is calculated as a probability sufficient to undermine confidence in the outcome of the case. *State v. Butler*, 307 Kan. 831, 853, 416 P.3d 116 (2018).

In evaluating Carter's claims, this court must give significant deference to the strategic decisions made by counsel at trial, and typically will not find trial counsel's performance to be deficient based on matters that involve trial strategy or professional judgment. *State v. Betancourt*, 301 Kan. 282, 306, 311, 342 P.3d 916 (2015). Rarely is an attorney's representation of a defendant deemed ineffective where deliberate, strategic decisions were made at trial from potentially suitable options. See *Strickland*, 466 U.S. at 690-91. A defendant "'is entitled to a fair trial but not a perfect one.'" *State v. Cruz*, 297 Kan. 1048, 1075, 307 P.3d 199 (2013). Even when an attorney's performance is somehow deficient, the defendant must demonstrate that the deficient performance sufficiently prejudiced the overall outcome of the case. *Edgar v. State*, 294 Kan. 828, 843-44, 283 P.3d 152 (2012).

Two of Carter's ineffective assistance of counsel claims stem from his counsel's failure to object at trial—issues Carter raised in his direct appeal. First, Carter alleges his counsel was ineffective for failing to object to five instances of alleged prosecutorial error during closing argument. In Carter's direct appeal, the Kansas Supreme Court addressed whether these statements constituted prosecutorial error—as compared to whether Carter's counsel's failure to object to these statements constituted ineffective assistance of counsel, which is argued here. *Carter*, 305 Kan. at 148-60. Although the direct appeal does not prevent Carter's claims here—it provides insight into their merit. Carter claims his counsel was ineffective for failing to object to the following prosecutorial statements that the Kansas Supreme Court addressed on his direct appeal:

7

- The prosecutor impermissibly made comments that the jury "had already reached certain factual conclusions";
- the prosecutor misstated the applicable law about premeditation;
- the prosecutor encouraged the jury to disregard a ruling made by the district court that favored Carter;
- the prosecutor invoked juror sympathy by bringing up the victim's family and giving the jurors the idea that they should be "the kind of juror that you would want to be if you were one of [the victim's] family members"; and
- The prosecutor included facts not in evidence when he "told the jury that [codefendant] had accused Mr. Carter of stabbing the victim, despite the fact that . . . assertion was never put into evidence."

On direct appeal, the Kansas Supreme Court found that each of the first four statements fell within the wide latitude afforded the prosecutor and that none of them constituted an error. 305 Kan. at 149-58. Because these comments did not constitute prosecutorial error, this court cannot say that Carter's counsel's failure to object amounts to deficient performance. Even if this court were to find error where our Supreme Court did not, Carter still cannot show any probability that a different result would have been reached by the jury had his counsel objected to those statements.

The Kansas Supreme Court did find that the fifth statement constituted an error because the prosecutor introduced facts not in evidence by stating that Carter's codefendant had claimed that Carter fatally stabbed the victim. However, the Supreme Court determined that error was harmless because "there was overwhelming evidence of Carter's participation in the chase and the attack, of sufficient time and opportunity for him to have formed premeditation, and of his incriminating behavior and statements later in the day of the murder." 305 Kan. at 155. Given the totality of the evidence against Carter, it is unlikely that his attorney's objection to the prosecutor's erroneous statement would have altered the outcome of the trial. The Kansas Supreme Court found the

8

prosecutor's error was harmless beyond a reasonable doubt—"the single error did not affect the outcome of the trial in light of the entire record; there is no reasonable possibility that the error contributed to the verdict." 305 Kan. at 155. Carter's counsel's failure to object to the error does not undermine this court's confidence in the jury's guilty verdict.

In Carter's second ineffective assistance of counsel claim, he alleges his counsel was ineffective for failing to object to a preliminary statement made by the trial judge about the reasonable doubt standard. Specifically, just before voir dire, the court told the potential jurors: "It's only if and when you are convinced beyond a reasonable doubt that what the State alleges occurred, that they have proven their case, the presumption then leaves the defendant and then your obligation becomes to vote guilty, if you are convinced beyond a reasonable doubt." Carter included this alleged error on direct appeal and the Kansas Supreme Court found that the trial judge's comment constituted an error because "[t]elling a jury it has an obligation to find a defendant guilty . . . all but directs a verdict for the State." 305 Kan. at 160. Because Carter's counsel failed to contemporaneously object, the court evaluated the harm of this error under the clear error standard and concluded that Carter could not show that it constituted a clear error because the comment occurred before voir dire and the court later gave the jury a proper instruction on reasonable doubt. The court explained that, "[t]he effect of any error before voir dire would have been tempered and quite likely erased by the later correct instruction." 305 Kan. at 160.

Even if this court were to conclude that Carter's counsel was ineffective for failing to object to the district court's comment, Carter cannot show the requisite prejudice to succeed on his current claim. Carter is required to show that there was a reasonable probability that has his counsel's failure to object to the trial judge's pre-voir dire statement affected the outcome of the trial in light of the entire record. *State v. Williams*, 295 Kan. 506, 518, 286 P.3d 195 (2012). So, this issue on appeal is whether this court

9

believes that but for his counsel's failure to object there was a reasonable probability the jury would have reached a different outcome. See *Bledsoe v. State*, 283 Kan. 81, 90, 150 P.3d 868 (2007). Carter cannot meet that burden because the weight of the evidence against him, including DNA testing that showed a sample of the victim's blood was found on Carter's hand and testimony of multiple witnesses about Carter's involvement in the murder. *Carter*, 305 Kan. at 141-43. Additionally, because the court made this erroneous statement so early in the trial and the jury was given a proper instruction on the reasonable doubt standard before deliberations, it is unlikely the outcome of the trial would have changed if Carter's counsel had timely objected.

Carter's only ineffective assistance of counsel claim that does not stem from errors that he previously argued in his direct appeal centers around his trial counsel's decision not to call his codefendant to testify at trial. Carter argues that his counsel's failure to call his codefendant prejudiced him because it "precluded any introduction of serious doubt as to whether [he] truly had any involvement at all in the stabbing."

Carter's claim is misguided for several reasons. Not only is the decision of whether to call a witness a matter of trial strategy that is generally within the exclusive province of the attorney, here there is no evidence the witness would have benefited Carter. See *Bledsoe*, 283 Kan. at 92. Counsel unquestionably has the duty to reasonably investigate potential witnesses or to conclude such investigations are unnecessary, but Carter does not allege that his counsel failed to inquire about whether his codefendant was willing to testify and incriminate himself in order to exonerate Carter. See *Salary*, 309 Kan. at 481. Although Carter's counsel theoretically could have called the codefendant to testify—the codefendant still maintained his right against self-incrimination and could have refused to answer questions by asserting his Fifth Amendment privilege. See *State v. Nott*, 234 Kan. 34, 36-37, 669 P.2d 660 (1983). The district court incorrectly concluded that Carter's codefendant was "unavailable for trial counsel to call as a witness," but it did correctly

10

note that the codefendant could have invoked his right against self-incrimination if he were called to the stand.

According to the State, Carter's codefendant was still facing charges at the time of Carter's trial and did not enter a plea agreement with the State until three months later. Under these circumstances, Carter's claim that had his codefendant been called as a witness he would have testified favorably on Carter's behalf is not only speculative, but dubious. At trial, Carter provided contradictory testimony—first claiming he did not stab the victim and never saw the codefendant stab the victim, but that he saw the codefendant beat the victim. Carter later testified that his codefendant stabbed the victim, but Carter only punched the victim. Given the evidence, it is difficult to imagine that his codefendant would have provided testimony exonerating Carter while still facing charges—especially when Carter blamed him. But even assuming that the codefendant would have testified on Carter's behalf, this court cannot speculate how this testimony would have affected the jury's verdict. See *Reynolds v. State*, No. 95,875, 2007 WL 2178060, at *4-5 (Kan. App. 2007) (unpublished opinion) (affirming denial of defendant's ineffective assistance of counsel claim because defendant failed to produce evidence about what his codefendant would have testified to or that he would have decided not to invoke his right against self-incrimination). Ultimately, Carter's speculative, conclusory argument does not support his ineffective assistance of counsel claim.

3. *The district court did not run afoul of Supreme Court Rule 183(j).*

Finally, Carter contends the district court failed to make sufficient findings of fact and conclusions of law as required by Rule 183(j), which requires a district court to "make findings of fact and conclusions of law on all issues presented" when addressing a defendant's K.S.A. 60-1507 motion. Supreme Court Rule 183(j) (2022 Kan. S. Ct. R. at 244); *State v. Hoge*, 283 Kan. 219, 221, 150 P.3d 905 (2007). District court adherence to

11

this requirement assists the appellate court in conducting a meaningful review of the claims because "'meaningful appellate review is precluded where a trial court's findings of fact and conclusions of law are inadequate to disclose the controlling facts or basis for the court's findings.'" *State v. Rodriguez*, 302 Kan. 85, 91, 350 P.3d 1083 (2015). This court conducts a de novo review to determine the sufficiency of a district court's findings of fact and conclusions of law, looking at the issue anew. *Breedlove v. State*, 310 Kan. 56, 59, 445 P.3d 1101 (2019).

Carter argues that the district court failed to comply with Rule 183(j) because it merely adopted "the findings and conclusions of the State . . . as laid out in its response in this matter as the findings and orders for the Court." The State counters by asserting that Carter failed to object to the court's findings at the hearing and, alternatively, it contends the district court's adoption of its findings and conclusions of law leaves room for review by this court. The State's second point is persuasive.

Although the Kansas Supreme Court has "frowned on the practice of a district court adopting a party's findings in their entirety," it has refused to adopt any standard that a court's decision to do so constitutes per se error. *Breedlove*, 310 Kan. at 60. Rather, the relevant question on appeal is whether the appellate court can still conduct a meaningful review. 310 Kan. at 60. Here, the court's findings and conclusions of law, coupled with its explanations at the hearing, are sufficient to allow this court to conduct a meaningful appellate review. While the court's explanation for its ruling may be brief, it meets the minimum standards set forth by Rule 183(j). The court sufficiently explained its rationale for its ruling and the adoption of the State's findings of fact and conclusions of law and together were sufficient to permit this court's review. As such, Carter's argument fails.

CONCLUSION

The doctrine of res judicata did not bar Carter's 60-1507 motion for ineffective assistance of counsel where he previously asserted the trial errors on direct appeal underlying his ineffective assistance of counsel claims—but his claims fail nonetheless. The majority of Carter's claims did not constitute errors, and where errors did occur Carter cannot not show the necessary prejudice. Finally, the district court's adoption of the State's findings of fact and conclusions of law did not violate Rule 183(j) when this court could still conduct a meaningful review on appeal.

Affirmed.